[Civil No. 2044. Filed March 31, 1923.]

[213 Pac. 691.]

G. W. PEER, Appellant, v. JOHN B. HUGHES, Appellee.

1. CONTRACTS—AGREEMENT TO MAKE AN AGREEMENT NOT ENFORCE-ABLE.—An agreement which specifies all the conditions of a postponed agreement is one *in praesenti*, but a provisional agreement which does not set out the conditions of the deferred contract or which omits material conditions is not a contract *in praesenti*,

See 13 C. J., p. 289; 27 Cyc. 691.

because the minds of the parties have not met, and may never meet.

2. MINES AND MINERALS—AGREEMENT FOR BOND AND LEASE OF MINING CLAIMS UNENFORCEABLE AS CONTRACT IN PRAESENTI.—An agreement for a bond and lease of mining claims, in which the lessee agreed to organize certain corporations and issue to the owner certain shares of stock therein and pay to him certain sums of money, but in which the terms and conditions of the bond and lease to be given by the owner were not set forth, was merely an agreement to make an agreement, and not a contract *in praesenti,* and hence unenforceable.

APPEAL from a judgment of the Superior Court of the County of Navajo. J. E. Crosby, Judge. Judgment reversed.

Mr. Carl G. Krook, Mr. S. L. Carpenter and Messrs. Sheran & Alvord, for Appellant.

Messrs. Hibbard & Kleindienst and Mr. C. H. Jordan, for Appellee.

ROSS, J.—The foundation of this lawsuit is the following instrument:

"Chloride, Arizona, Jany. 28, 1916.

"Memorandum of agreement by and between J. B. Hughes of Chloride, Arizona, and G. W. Peer, of Los Angeles, Calif.

"Said J. B. Hughes, as the owner thereof, agrees to bond and lease the group of claims known as the Bobbie Burns group, consisting of the Bobbie Burns, Bobbie Burns Extension, Bobbie Burns 2d, and Bobbie Burns 3d claims, located in the Haulpi mining district, Mohave county, Arizona, for and in consideration of the payment to him of the sum of one dollar, the receipt whereof is hereby acknowledged, and the further following considerations:

"Said G. W. Peer agrees to organize and incorporate the Arizona Metals Company under the laws of the state of Arizona, to be capitalized for $1,000,000, 1,000,000 shares at $1.00 per share to operate said property, and to issue to said Hughes 50,000

shares of the said company; said company to be incorporated not later than Feby. 20, 1916.

"Said Peer further agrees to incorporate the General Metals Company for 500,000 shares at $1.00 per share, to be the parent or holding company of the Arizona Metals Company, and such other companies as may be subsequently organized by him, under the laws of Arizona, not later than March 1, 1916, and to issue to said Hughes 25,000 shares thereof.

"Said Peer further agrees to pay to said Hughes the sum of twenty-five thousand dollars ($25,000) as follows: Five thousand dollars ($5,000) on or before ten months from the date hereof and twenty thousand ($20,000) on or before twenty-four months from date hereof.

"Said Peer agrees to provide sufficient supplies and equipment for and to employ two men in preliminary development work on or before Feby. 10, 1916.

"Said Peer further agrees to employ not less than four men in actual work on or before March 15, 1916.

"Cessation of work longer than thirty consecutive days, except such as may be due to causes beyond the control of said Peer or assigns, to work a forfeiture of said contract at the option of the said Hughes.

"Said G. W. Peer reserves right to assign the said bond and lease to the Arizona Metals Company.

" [In duplicate.]

"JOHN B. HUGHES.
"G. W. PEER."

The plaintiff, Hughes, has declared upon the above agreement as a lease and has demanded judgment against defendant, Peer, for $100,000—$75,000 as the value of stock reserved to him and $25,000 to cover cash payments mentioned in contract. The defendant filed a general demurrer, which was overruled. Upon a trial before the court plaintiff was given judgment for $5,000.

The defendant makes several assignments of error. We will consider one only, since it disposes of the case. At the close of the evidence, defendant made

a motion for judgment on the ground that plaintiff had not made out a case.

The instrument sued on is what is known as an agreement to make an agreement. Such agreements are usually provisional or temporary; it being the intention at some later date to set out in a more formal way the terms and conditions of the proposed agreement. If all the conditions of the postponed agreement are specified in such agreement, it is an agreement *in praesenti. McKell* v. *Chesapeake & Ohio Ry. Co.,* 175 Fed. 321, 20 Ann. Cas. 1097, 99 C. C. A. 109. But where the conditions of the deferred contract are not set out in the provisional one, or where material conditions are omitted, it is not a contract *in praesenti,* because the minds have not met and may never meet.

"To be enforceable, a contract to enter into a future contract must specify all its material and essential terms, and leave none to be agreed upon as the result of future negotiations." 6 R. C. L. 617, § 38.

See, also, 13 C. J. 289, § 100; Elliott on Contracts, vol. 1, § 175; Ridgway & Wharton, 6 H. L. Case, 268; *Shepard* v. *Carpenter,* 54 Minn. 153, 55 N. W. 906; *Sibley* v. *Felton,* 156 Mass. 273, 31 N. E. 10; *St. Louis & S. F. R. Co.* v. *Gorman,* 79 Kan. 643, 28 L. R. A. (N. S.) 637, 100 Pac. 647; *Dillingham* v. *Dahlgren,* 52 Cal. App. 322, 198 Pac. 832.

According to the agreement made the basis of this suit, defendant, Peer, bound himself to pay plaintiff, Hughes, $25,000 cash and 75,000 shares of stock in mining companies to be organized by Peer; to put two men at preliminary development on or before February 10th; to employ not less than four men in actual work on or before March 15, 1916, and to forfeit his contract if, for any cause except causes beyond his power to control, work ceased for longer than thirty consecutive days. In return for all these

promises he got the agreement of Hughes "to bond and lease the group of claims known as the Bobbie Burns group." There is no specification as to the conditions of the bond or lease he agreed to execute, no provision as to when or how, if at all he will convey the title of mining claims to Peer, and none as to when lease shall begin or terminate, or the rights and privileges of lessee to explore and prospect for ore bodies, or the disposition of improvements in the way of machinery, mills, trackage, tools or minerals extracted—provisions usual and common to bonds and leases of mining claims.

These details that necessarily enter into options or conditional mining deals were not inserted in the provisional agreement, and were left at large in suspense, to be settled in the final negotiations and included in the "bond and lease." It is, we think, obvious from the face of the agreement sued on that it does not contain, and was not intended to contain, all of the terms and conditions of the future contract. However, if any doubt were entertained of that, the letter written by plaintiff, the day following the date of the execution of the provisional agreement, to defendant, who, it seems, was to cause bond and lease to be drawn, would remove such doubt. In the letter he said:

"In our temporary agreement you failed to mention the royalty (10 per cent) to be paid on ores shipped during the life of lease and bond. My proposition was that royalties apply on purchase price. . . . Don't forget to put into the papers that buildings and underground track must be left on the property. In other words, protect me just like you would like to be protected."

We think defendant's motion should have been granted, because the instrument sued on was not a contract, but an agreement to make a contract in the

future, the terms and conditions of which were left open to further negotiations.

We suppose that what was signed, and what was expected to be signed, as expressing their full agreement, were really intended to evidence an optional sale of the mines by the plaintiff to the defendant, and not a lease. The lease idea incorporated in the agreement was an incident to the sale, for the purpose, doubtless, of enabling defendant to investigate the mines and determine whether he would exercise his option. We know of no rule by which to estimate the rental value of an undeveloped and nonproducing mine, but in no event could plaintiff adopt the agreed purchase price as a basis for damages for failure to pay rent.

Our conclusion is that the judgment of the lower court should be reversed and the cause remanded, with the direction that plaintiff's complaint be dismissed.

McALISTER, C. J., and LYMAN, J., concur.