## LADD v. FOSTER INV. CO.
### No. 179.

Circuit Court of Appeals, Tenth Circuit.

May 3, 1930.

See also 26 F.(2d) 698.

Willard Brooks, of Wichita, Kan. (C. H. Brooks and Howard T. Fleeson, both of Wichita, Kan., on the brief), for appellant.

C. H. Rosenstein, of Tulsa, Okl. (M. H. Silverman, of Tulsa, Okl., on the brief), for appellee.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

COTTERAL, Circuit Judge.

This action was brought by L. A. Ladd to recover damages from the Foster Investment Company for breach of a contract to accept and pay for an oil and gas lease, upon approximately 300 acres of land in Greenwood county, Kan. The issues were made up, and at the close of a trial to a jury, a verdict was directed and judgment entered for the defendant company. Ladd assigns error in that action and the exclusion of certain evidence.

In the petition, Ladd alleged he had title to the land by deed of Mabel M. Kofoid, as administratrix of Harvey Kofoid, and a contract of March 1, 1924, with her as administratrix and guardian of his two minor heirs, made with approval of the probate judge, requiring him to use diligence in making oil leases after consulting with her, and from the proceeds to discharge all liens against the land and the debts of the estate, the balance to revert to the heirs.

He then alleged the execution of a written contract with the defendant company on November 4, 1925, at Eureka, Kan., whereby he agreed to lease the land for oil and gas mining purposes, under the terms of regular Producers' Form of lease for five years, in consideration of $10,000, payable on delivery of the lease to the Exchange National Bank, Tulsa, Okl., with abstract showing good and merchantable title in him, and that he performed the conditions of the contract on his part, delivering the abstract and two leases for separate portions of the land on November 13, 1925.

It is next alleged that the company submitted the abstract and leases to its attorney, C. H. Rosenstein, receiving his opinion on November 18, 1925, in which he disapproved the title on the sole ground that by her sale, taken with the contract, the administratrix might be held an indirect purchaser in viola-

tion of a Kansas statute, and suggested that if the title should be placed in satisfactory condition one lease instead of two should be executed; that the company sent a copy of the letter, with the abstract and leases, to Ladd by a letter of November 18, 1925, instructing him to get in touch with its attorneys, Leydig, Geddes & Grant, of El Dorado, Kan., and with them work out a plan to cure the defect, expressing a desire to complete the transaction; that plaintiff went with his attorney to see those attorneys, and E. W. Grant of that firm held the title was good, but suggested it be supplemented by probate court proceedings to dispose of the interest of the minors, requiring about ten days, and advised plaintiff the title would be satisfactory if that court should authorize the guardian to execute the lease for the minors and the widow would execute it, and directed plaintiff to take those steps; and thereby the company ratified the contract and the one lease, and waived the necessary delay incident to such proceedings.

It is further alleged that Ladd proceeded to comply with the foregoing instructions and would have done so in a reasonable time, but for the company's letter of November 24, 1925, which repudiated the contract and refused to accept the leases, whereby plaintiff's damages became fixed at that date, rendering the guardianship proceedings unnecessary, but nevertheless, in excess of caution, a confirmation was obtained, on petition, notice, and hearing, on December 19, 1925, and a lease was executed on January 12, 1926, and tendered to the company two days later, signed by plaintiff and his wife, and Mabel M. Kofoid for herself and as guardian of the children. Finally, it is alleged the lease contracted for was on November 4, 1925, worth $10,000, but on November 24, 1925, and ever since it has had no market value. Copies of the contract and letters are exhibited with the petition.

The company filed a verified answer, admitting the correctness of the exhibits, except the lease made in January, 1926, and denies the tender of it. The answer also denies the company suggested that title to the land be supplemented by probate proceedings to dispose of any interest of the Kofoid heirs or if done the title would be satisfactory, denies authority of Leydig, Geddes & Grant to make any agreement or waiver for the company, or that Grant agreed the title with certain probate proceedings would be satisfactory to the company, alleges that firm had authority only to advise the company as to steps they believed necessary to make the title mer-

chantable, and alleges after the firm made its report, on November 23, 1925, the company advised plaintiff they would proceed no further toward the purchase of the lease and rescinded the original agreement. The answer specifically denies the tender of the lease or an abstract showing good and merchantable title to the land.

Various questions have been argued, but at the outset appellee contends there was no enforceable contract between the parties because certain terms of the lease were not specified, and hence the company could not be liable for nonperformance. There was absent any stipulation as to the amount of royalty, the time drilling was to commence, the rent due for delay, or other terms of a complete lease. The contract was to make another, a lease contract. In order to be binding, it was essential that all the terms and conditions of the latter be specified, and as this was not done, the contract was not enforceable. Grow v. Davis, 110 Kan. 214, 203 P. 683; Peer v. Hughes, 25 Ariz. 105, 213 P. 691.

But we pass to other questions presented. It appears from the evidence that on November 14, 1925, two leases and an abstract of title were tendered by appellant to the appellee at bank, with draft attached for $10,000. The petition does not correctly or fully state the contents of Mr. Rosenstein's letter. He reported as objections to the title: (1) Five mortgage liens aggregating $12,864.27, and interest; (2) an outstanding gas and oil lease for a five-year term, provided there was production or the lessee was in possession attempting to complete a well within the term; (3) a deed of the administratrix probably void because the contract was a device for a sale to her; and (4) the tender of two leases instead of one.

Counsel for Ladd admits the title as offered was not merchantable, and was properly subject to rejection, but contends that as no time was specified for furnishing the lease, time was waived and the contract was kept alive by the request of the company to cure the defects, so that the transaction turned on Ladd's "prospective ability to perform" within a reasonable time. Performance was sought to be rendered by the probate proceedings, culminating in a single lease of Ladd and wife, and Mrs. Kofoid as an individual and as guardian of the minor heirs, executed and tendered in January, 1926.

A difficulty with this position is it assumes, as the petition alleges, the attorneys

at El Dorado were authorized to act for and bind the appellee, and necessarily on the strength of appellee's letter of November 18, 1925, to appellant, for want of other proof, but it contained no such authority. It was as follows:

"We enclose carbon copy of opinion of our attorney, C. H. Rosenstein, affecting the title to the three hundred acres of land in Sections 25 and 26 of Township 26 South, Range 9 East, Greenwood County, Kansas, covering which we purchased an oil and gas mining lease from you several days ago.

"You will notice from this opinion that Mr. Rosenstein rejects the title absolutely. We are, therefore, returning the abstract and leases to the bank today, with instructions that they be forwarded to you.

"We are also writing Messrs. Leydig, Geddes and Grant, attorneys at El Dorado, Kansas, who have represented us in several matters, requesting that they immediately get in touch with you and try to work out some plan whereby you may be able to deliver a merchantable title to us. We are anxious to complete this transaction as soon as possible and have so advised these attorneys. Will you please give them all assistance possible?

"Very truly yours,
"Foster Investment Co.,
"RMS:JWB    By John W. Blue."

On November 21, 1925, appellant with his attorney, J. A. Fuller, called on Mr. Grant, at El Dorado, and showed him the appellee's letter, with Mr. Rosenstein's opinion. Ladd testified Grant stated he had done some work for the company, was sure the matter could be arranged, thought the title was all right, but appellee might wish guardianship proceedings, and that he would report to appellee, recommending the procedure. But the letter shows that Grant was only to negotiate and recommend a plan of perfecting title.

Fuller testified:

"The conversation was that Mr. Grant remarked on seeing our letter that he had received a letter from the Foster Investment Co. and had done some work for them; that in his opinion the title was good, but in order to meet any objections that they had made there, if the former owners of the land joined in the lease, that would certainly cure it, and he suggested that if a petition was filed in the Probate Court asking its authority to lease the interests of the minors under the contract, whatever contingent interest they might have, and Mrs. Kofoid would join

in the lease, it certainly would make a good lease. Mr. Grant asked if he should come to Eureka and file a petition, and I told him I would look after it. He said he would write the Foster Investment Company. He did not say what he was going to tell them."

On November 24, 1925, appellee wrote appellant as follows:

"Referring to the lease mentioned in our agreement of November 4th, 1925, covering certain lands in Section 25 and 26, Section (Township) 26 South, Range 9 East, in Greenwood County, Kansas, we beg to advise that, in view of the fact that you are not able to furnish good merchantable title to this lease, and that it will take considerable time to attempt to fix up this title, we have decided not to take the lease, but to cancel and rescind the contract that we have heretofore entered into.

"Very respectfully,
"Foster Investment Co.,
"JWB:RMS    By John W. Blue."

John W. Blue testified: That he was in charge of the land and lease department of the Foster Investment Company; that he forwarded a copy of the contract of November 4, 1925, the Rosenstein opinion and the letter to Ladd, dated November 18, 1925, to Leydig, Geddes & Grant, accompanied by a letter to the latter firm, in which he requested them to go into the matter of the defects in the title and advise whether, in their opinion, "the matter can be worked out"; that in response to such letter, he received a report with recommendations from the firm; that he took their letter to Rosenstein and went over the matter with him; that they decided the title could not be fixed up in a reasonable time, and would not be salable; that they would not go any further with the transaction; that thereupon he wrote the letter of November 24th to Ladd. He added that if a well to the southwest should be completed and be dry during the pendency of these matters, it might be necessary to take the title, but if it should be an oil well, the probate court would not sell it at the contract price. He also stated Grant suggested a suit to quiet title as well as the probate proceedings.

The company was free to accept or reject Grant's recommendations. Ladd had no privilege to comply with them unless they were acceptable to the company and could be carried out within a reasonable time. In any event, there was no "prospective ability" to tender a good and merchantable title in compliance with Grant's suggestions in a reasonable time, as was demonstrated by the time

required for the belated tender. Clearly a speedier remedy of the title was necessary. There was drilling in the vicinity. The outcome of it might render the lease valueless. The duty of Ladd to render a good title was urgent. His claim to damages rests on the ground that the lease became worthless by November 24th, and yet meantime the title was not and could not be made good or merchantable. It is obvious performance of the contract on Ladd's part could not be rendered within a period that would be reasonable under the circumstances. Furthermore, the proposal was to take steps for approval of the lease in behalf of the minor heirs. The situation confronting the company was that if it waited, and the lease should become valueless, the probate court, having a duty to act in the interest of the minors, would approve the lease as to them, but if the lease should become very valuable, the same duty would require that the lease of their interest be disapproved. Mallen v. Ruth Oil Co. (C. C. A.) 231 F. 845. The fault lay with Ladd in not being able to tender title as agreed. In the situation, the company had a right to demand it with certainty and without unreasonable delay, and rightfully rejected it.

Appellant's position is not more favorable on the theory of the petition that Grant was authorized by the company to accept and ratify the title when rendered according to his views. The District Court overruled the demurrer to the third amended petition solely because of his alleged authority. Assuming he had such authority and agreed to the modification of the contract, Ladd is met with the principle that it was not in writing and was therefore invalid under the statute of frauds. Banister v. Fallis, 85 Kan. 320, 116 P. 822; Empire Gas & Fuel Co. v. Stern (C. C. A.) 15 F.(2d) 323. It is clear that Ladd cannot prevail with his claim to damages for breach of contract, under any theory of the facts.

The alleged errors in excluding evidence require only brief notice. In substance, it was sought to show that Ladd's bank was willing and able to discharge the liens against the land and the debts of the estate from proceeds of the lease, the company had knowledge of the contract with Mrs. Kofoid, the probate judge approved it, and Ladd's deed was for the benefit of the bank. We may assume affirmative answers would have been elicited to these questions. We may also assume the outstanding lease was without force. But objections to the title still remained, which rendered it neither good nor merchantable, and not curable in a reasonable time.

It is said that the motive of the company for canceling the contract was that the lease had become valueless. This is immaterial and unavailing to appellant, if as we have concluded the company had a right to reject the title.

The District Court did not err in directing a verdict for the company, and the judgment in its favor is accordingly affirmed.