No. 30,901

John L. Parkhurst, *Appellee*, v. Investors Syndicate, *Appellant.*

(23 P. 2d 589.)

8

Opinion filed July 8, 1933.

*Bennett R. Wheeler, S. M. Brewster, John L. Hunt, Margaret McGurnaghan* and *Ralph M. Hope,* all of Topeka, for the appellant.

*Frederick G. Apt* and *A. R. Enfield,* both of Iola, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action to construe and to recover on certain monetary obligations issued by defendant and designated "accumulative installment certificate," of which plaintiff had become the owner by assignment from various former holders. Plaintiff presented the certificates to defendant for registration in his name together with the transfer fee prescribed for that service. Defendant registered the certificates in plaintiff's name but also stamped them "not transferable" for the avowed purpose of preventing their further availability for sale, barter or exchange by assignment.

The certificates were ninety-four in number. They had been serially issued, were of varying tenor, and in denominations of $1,000, $1,500, $2,000, $2,500 and $5,000. Their value depended on stipulated conditions embodied in the instruments and upon the number of periodical installments the owner had paid thereon. The schedule attached to plaintiff's petition showed that on some of these certificates as many as forty-one installments, aggregating $1,717.88, had been paid by the holder, and on others as little as four and five payments, aggregating $154.30 and $192.90, had been credited.

Just what precise benefits the holders of these certificates would be entitled to if the installments were paid in full is not easy to state, but, fortunately, that matter does not require determination at this time. The terms of each certificate did provide for a cash surrender value after two years, and tabulated values pertaining thereto were set out in the text of the instrument. Other provisions of present concern were these:

"11. Miscellaneous. No person has authority to alter or change the terms of this certificate, or bind the syndicate by any statement, written or oral,

not herein contained. . . . The syndicate shall have the right at any time at its option to call in this certificate and take it up by paying the registered owner hereof the full amount paid thereon together with 5½ per cent interest, compounded annually, for the time the syndicate has had the use of the money.

. . . . . . . . . . . . . . . .

"9. Assignment. This certificate, if in force and uncanceled on the books of the company, may be assigned, but the assignment or transfer hereof shall not be valid without the consent in writing indorsed hereon by the company and a transfer fee of one dollar paid to the company."

Forms for use in assignment of each certificate were printed on the instrument together with the rule pertaining thereto, which reads:

"This assignment will not be valid until approved by the syndicate and entered upon its books and a transfer fee of one dollar is paid."

Plaintiff's petition alleged his ownership of the certificates; that they had been properly assigned to him; that he had tendered the required transfer fee, but that defendant without right delayed and refused to record the assignments, although eventually defendant did register the transfer of the certificates and at the same time indorsed each of them with the words "not transferable." Plaintiff also alleged, in substance, that defendant had no right to place such indorsements on the certificates; that when issued they were assignable under their specific terms; that this act of defendant hindered and prevented their sale and transfer, and was in effect an election on the part of defendant to terminate the contract relation theretofore existing between it and the lawful owner, and constituted a calling in of those certificates under the contract provision which reserved to defendant that privilege upon its return of the total amount of installments paid on such certificates together with 5½ per cent interest compounded annually.

This petition was unsuccessfully subjected to a demurrer and motion to strike; and defendant answered with a general denial, certain formal admissions, and an admission of the issuance of the certificates sued on, their dates, serial numbers, and maturity values. Defendant joined issue on the accuracy of a schedule attached to plaintiff's petition showing payments which had been made on the certificates. The answer also admitted that it had indorsed the certificates "not transferable" but alleged that such indorsement was placed thereon with the consent of plaintiff and under an oral agreement with him to that effect. Defendant also denied that the indorsement of the words "not transferable" upon the certificates

hindered or prevented the sale thereof or that it depreciated their value in any respect, and denied that placing such indorsement on the certificates was wrongful.

The cause was tried by the court without a jury. The evidence developed no material dispute of fact. One witness for defendant testified and another deposed that they had a conversation with plaintiff touching defendant's refusal to register the certificates in plaintiff's name, at which time he orally agreed that they might be stamped "not transferable." Defendant's state manager testified that he told plaintiff—

"That we were not going to transfer them and permit him to resell these certificates, because it was encouraging the Bankers Mortgage Company in taking advantage of our certificate holders and in hurting our business, and we were not going to leave the bars down to that extent any longer, and he said that was all right. We were going to transfer the certificates to Dr. Parkhurst, conditionally. The condition was that they would not be negotiable. We told him that he would not be permitted to sell them any more, and he agreed to that; he said, 'All right.'"

At the conclusion of the evidence the trial court ruled that the evidence just quoted and other evidence to the same effect was incompetent and would be disregarded. The court made extended findings of fact and conclusions of law, the substance of which was that defendant had no right to stamp the certificates "not transferable"; that plaintiff's oral assent thereto was without consideration and void under the statute of frauds; that the act of thus stamping the certificates destroyed their value for purposes of barter, sale or exchange, and was in effect a calling in of the certificates for liquidation under defendant's reserved privilege to that effect on repayment to the holder of the amount defendant had received thereon, together with 5½ per cent interest compounded annually.

Judgment was entered accordingly, and defendant appeals.

Defendant opens its argument with a discussion of the nature of the action—whether it sounded in assumpsit or in conversion. While it is quite correct that an action must be brought on a definite theory (*Grentner v. Fehrenschield,* 64 Kan. 764, 68 Pac. 619), the cause does not fail for lack of a label nor for a wrong label. The nature of the action is to be determined by its recitals of fact and without regard to the relief demanded. (*Eagan v. Murray,* 102 Kan. 193, 170 Pac. 389; *Wellington v. Insurance Co.,* 112 Kan. 687, 212 Pac. 892.) Plaintiff's petition stated the rather peculiar facts

constituting the cause of action, in ordinary and concise language and without repetition, and it contained a demand for the relief to which he supposed himself entitled; and a cause so stated sufficiently complied with the rules of good pleading under section 92 of the civil code (R. S. 60-704). Defendant did level at the petition a demurrer and motion to strike, but it acquiesced in the trial court's adverse rulings thereon, and its answer thereafter filed shows that it did·not misconceive the issues it was required to meet.

It is suggested in the brief of defendant that it was justified in its refusal to register the assignment and transfer of plaintiff's certificates, because some apparently rival concern, the Bankers Mortgage Company, was "hurting defendant's business," as if that fact would excuse its failure to perform its duty to record the transfer of plaintiff's certificates. Defendant had no discretionary privilege to record or not to record the transfer of these certificates. It was bound to record such transfer at the behest of the lawful assignee, upon payment of the prescribed transfer fee. Defendant formulated these specious contracts; it was responsible for their textual contents, and if it had intended that only an assignee who was *persona grata* to defendant would be entitled·to have assignments in his behalf entered on its transfer record it should have plainly said so in black and white before it sold them to a confiding public. While the pertinent provision declares that an assignment will not be valid without the consent of the company in writing, there is no room for interpretation that this consent might be withheld for mere caprice or without good excuse, and no intimation of good excuse or justification was either pleaded or proved.

It is also contended that the only remedy of plaintiff was to sue for the cash surrender value. The contract had two outstanding provisions quoted above which bear on this point. In substance these were that if the certificate holder desired to terminate his contractual relation with the company he could do so and obtain the cash surrender value; and if the company desired to terminate its contractual relation with the certificate holder it could do so by calling in the certificate and by payment of the amount received thereon with 5½ per cent compound interest.

Now it is perfectly obvious that plaintiff never did anything to signify that he desired to terminate his contractual relation with the company and to accept the cash surrender value. The cer-

tificates were subject to sale, barter and exchange, and the assignee had the privilege of having transfers recorded on the books of the company on payment of a nominal fee. Plaintiff, as lawful assignee, was standing on his right and proceeding in accordance with the contract terms when he presented his certificates to have the transfers recorded. It was the frustration of that right by defendant which brought on this lawsuit.

On the other hand, defendant's refusal to record the transfers was not authorized by any specific terms of the contract nor by any fair implication thereof. How, then, could that refusal and the subsequent stamping of plaintiff's certificates "not transferable" be justified except on the theory that defendant had determined to put an end to whatever contractual obligations it had undertaken toward their lawful holder? It seems just to say, as did the trial court, that such an attitude and course of conduct on defendant's part was in effect an election to call in the certificates for redemption as stipulated in the contract—by repayment of the sums received thereon plus 5½ per cent compound interest.

But the point is stressed that plaintiff orally assented to the defendant's act of stamping the certificates "not transferable" to prevent their further assignment. Even so, what did that oral assent amount to? The contracts were written instruments designed to bind the parties for a term in excess of one year, and in consequence plaintiff's oral assent to a modification of their terms was wholly ineffective under well-established precedents. (*Hoard v. Jones*, 119 Kan. 138, 237 Pac. 888, syl. ¶ 5; Anno., Statute of Frauds, Modification of Contract, 80 A. L. R. 539-549.)

Another perfectly good answer to the fact of plaintiff's oral assent to the modification of the contracts is that it was altogether without a valid consideration. (*Threshing Machine Co. v. Francisco*, 106 Kan. 704, 709, 189 Pac. 981; *Ladd v. Foster Inv. Co.*, 40 F. 2d 497; 13 C. J. 592; 6 R. C. L. 916; also, note in L. R. A. 1915B 3 *et seq.*)

These salutary rules of law are certainly of as much importance to defendant as to plaintiff in view of the vast number of "accumulative installment certificates" it has succeeded in placing with the investing public.

Still another point urged is that stamping plaintiff's certificates with the words "not transferable" had no legal effect upon them. In a certain sense one finding of the trial court was to that effect.

It is true that as defendant had no right to place the words "not transferable" on the certificates their unauthorized appearance thereon did not technically affect their legality. But in a practical sense, of course, the result was that the certificates could not be bought and sold with that indorsement on them.

The record of this case has been studied with painstaking care; the court is constrained to hold that prejudicial error is not made to appear, and the judgment is therefore affirmed.