500 P.2d 901

**DUTCH INNS OF AMERICA, INC., a Florida corporation, Appellant,**

**v.**

**HORIZON CORPORATION, a Delaware corporation, Appellee.**

**No. 2 CA–CIV 1128.**

Court of Appeals of Arizona,
Division 2.

Sept. 12, 1972.

Rehearing Denied Oct. 5, 1972.

Review Denied Oct. 31, 1972.

1. The Arizona Supreme Court denied review on July 13, 1972.

Stanley Krotenberg, Tucson, for appellant.

J. C. Padilla, Tucson, for appellee.

HOWARD, Judge.

This is an appeal from a summary judgment in favor of the plaintiff, Horizon Corporation, for $12,000, the sum paid to the defendant, Dutch Inns of America, Inc., as consideration for entering into a lease and license agreement.

The pertinent facts are as follows. Horizon, a Delaware corporation licensed to do business in the State of Arizona, made an application for License and Leaseback (franchise) to Dutch Inns of America, Inc., a Florida corporation, on January 15, 1969. The application and a check in the amount of $12,500 were delivered to Dutch Inns in accordance with the following provision in the application signed by authorized representatives of both corporations:

"Enclosed with this application is my check for $12,500 representing the full amount of the Dutch Inn License and Leaseback fee. It is agreed that upon acceptance of this check that Dutch Inns of America, Inc., will not accept any other license application within a radius around

the proposed site to be determined by the preliminary feasibility study of the project for a period of 90 days. It is further agreed that should this license application be accepted and approved by the Dutch Inn License Committee, the Applicant agrees to sign the license agreement within 30 days after approval by the said Committee. It is understood that should this license application not be approved by the Dutch Inn License Committee, the full amount of this check shall be refunded less the cost of a preliminary report of $500.00."

A letter and rider thereto, written by Dutch Inns and bearing the same date as the application, were attached to and made a part of the application. It stated in pertinent part:

". . . Dutch Inns of America, Inc., will accept your site for a license and leaseback on the following terms and conditions:

1. Dutch Inns is selling to you a lease and license agreement for $12,500.00.

\* \* \* \* \* \*

3. We shall guarantee your debt service in the amount of *$750.00* \* per room per annum, as a minimum rental guarantee.

\* \* \* \* \* \*

An inspection will be made of your site shortly by our Dutch Inn Research Department and the above license and lease is contingent upon our acceptance of your site. If for any reason we reject your site, we shall give you a written report as to the reasons for the rejection and enclose with the report our check for $12,000.00.

\* See Rider attached."

The complete text of the rider provided:

"It is agreed that in the event $750.00 per room does not cover the actual debt service that figure shall be adjusted upwards to cover all mortgages and the debt service therein.

It is agreed that upon completion of the Dutch Inns feasibility and mortgage

package, the Horizon Corporation will have the right to withdraw from the entire deal and the maximum limit of their liability shall be the amount of $12,500.00."

Subsequent correspondence leading to the dispute between the parties included a letter dated July 28, 1969, written by the vice president of Horizon acknowledging receipt and review of the feasibility study report. He also informed Dutch Inns that the annual debt service guarantee of $750 was inadequate and should be increased to $1,720.31 per room for the proposed 96-room facility. Dutch Inns answered by letter dated August 11, 1969, advising that it would consider the requested increase on the debt service guarantee and would communicate with Horizon "as soon as possible."

In a letter dated October 1, 1969, the president of Horizon terminated further negotiations concerning the amount of the debt service, stating in part:

"I believe that too much time has elapsed in this matter and therefore this letter shall be a formal request to you for the return of the $12,500 paid to you. Unless we receive a check from you within 10 days, we shall have no alternative but to turn the matter over to our counsel for collection."

Correspondence ensued between counsel for both parties and an offer was made by Dutch Inns' counsel to Horizon in a letter dated November 21, 1969, to execute a new lease with a minimum annual guarantee per room of the recommended modification of $1,721.30. He also indicated that Dutch Inns would attempt to obtain the mortgage at a lesser rate of interest and that revised documents would be submitted to Horizon. In response, Horizon renewed its demand for a refund of the full $12,500 in a letter dated March 31, 1970, stating that Dutch Inns had not made any effort to further an agreement and that no documents had been forwarded to Horizon. On May 20, 1970, counsel for Dutch Inns wrote that his client was still interested in leasing Horizon's property for the purpose of operating a Dutch Inn, and enclosed a revised lease for execution.

Horizon Corporation filed its complaint on July 16, 1970, for money had and received and demanded a return of $12,000. The gist of the complaint was that the $12,000 was to be retained by Dutch Inns only if the parties entered into a certain agreement which contingency had not occurred.

On appeal, Dutch Inns challenges the propriety of granting Horizon's motion for summary judgment. Its position is that the parties had entered into a valid and binding contract from which Horizon withdrew without justification, subjecting itself to the maximum liability of $12,500 as provided in the rider to the letter sent to Horizon on January 15th, and that furthermore, the question of which party breached the contract was a question of fact which could not properly be resolved on a motion for summary judgment.

Dutch Inns has raised four questions on appeal. However, the question determinative of this appeal is whether the superior court erred in granting the plaintiff's motion for summary judgment. Rule 56(c), as amended, Rules of Civil Procedure, 16 A.R.S., establishes the standard for determining whether summary judgment should be granted to a moving party:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to a judgment as a matter of law."

█ In other words, there are two prerequisites that must be met before entry of summary judgment is appropriate: (1) The record before the court must show that there is no genuine dispute as to any material fact and that only one inference can be drawn from those undisputed material facts; and (2) that based on the undisputed material facts the moving party is en-

titled to judgment as a matter of law. Choisser v. State ex rel. Herman, 12 Ariz. App. 259, 469 P.2d 493 (1970).

In reviewing the granting of a motion for summary judgment, we must view the evidence in the light most favorable to the party opposing the motion, and the motion should be denied if there are any material issues of fact to be litigated. Hensley v. Town of Peoria, 14 Ariz.App. 581, 485 P.2d 570 (1971). If the evidence thus viewed is such that reasonable men might reach different conclusions as to whether there is a genuine issue as to any material fact, the judgment must be reversed. Livingston v. Citizen's Utility, Inc., 107 Ariz. 62, 481 P.2d 855 (1971); Harbour v. Reliable Insurance Co., 94 Ariz. 344, 385 P.2d 220 (1963).

Applying these well established rules, we believe that the granting of Horizon's motion was erroneous for the reason that Horizon failed to demonstrate that it was entitled to judgment as a matter of law. We also perceive that there is an undecided factual issue concerning the circumstances and reasons for the failure of the parties to execute a final lease. Horizon has admitted in its answering brief that "pursuant to the provisions of the second part of the contract, appellee proposed an upward adjustment of the amount of the debt service guarantee, which was not accepted by appellant within a reasonable time, thus prompting appellee to revoke its offer." It is a fundamental principle of contract law that where no time is specified for performance, a reasonable time is implied. What constitutes a reasonable time is ordinarily a question of fact. Zancanaro v. Cross, 85 Ariz. 394, 339 P.2d 746 (1959).

In order for Horizon to have been entitled to recover the $12,000 deposit to Dutch Inns it would have had to prove either that the final lease was not executed because Dutch Inns failed to fulfill the conditions in the letter and rider or that no contract was entered into between the parties. In fact, Dutch Inns performed its required conditions and accepted both Horizon's application for the license and leaseback and Horizon's proposed motel site. The only matter to be completed between the parties was a mutual agreement on the amount of the guaranteed annual debt service, to be determined by an analysis of the feasibility study which was completed by Dutch Inns and accepted by Horizon, upon which Horizon based its conclusion that the debt service was to be increased from $750 per room to $1,720.31.

In support of its position that summary judgment was properly granted, Horizon asserts two inconsistent arguments on appeal. On the one hand it maintains that its suggested increase of the annual debt service was an "offer" which Dutch Inns failed to accept or reject within a reasonable time, allowing Horizon to revoke the offer. This argument is not tenable in light of Horizon's other argument that the appended letter and rider did not constitute a binding and enforceable contract but were merely an agreement to agree, since the final amount of the unusual debt service remained open to future negotiations between the parties. In support of the latter position, Horizon cites Peer v. Hughes, 25 Ariz. 105, 213 P. 691 (1923):

> "To be enforceable, a contract to enter into a future contract must specify all its material and essential terms, and leave none to be agreed upon as the result of future negotiations." 25 Ariz. at 108, 213 P. at 691.

This authority is not exactly apposite to the case *sub judice*, since here the parties specifically understood that the annual debt service was subject to modification based upon the objective data in the Dutch Inns' feasibility report which Horizon reviewed and upon which it proposed an increase in the debt service. Horizon admitted this in its memorandum in support of summary judgment:

> "It is implicit in the agreement that the feasibility study was to be made for the

**120**

benefit of both parties . . . . Its disclosures would enable the parties to reach a decision as to the terms and conditions under which it might be established and operated. A definite final agreement would of necessity have to abide the preparation of the preliminary feasibility study which would afford the parties a basis for their ultimate understanding."

■■■ We have examined the pleadings, motions and memoranda in support thereof, and have primarily focused attention upon the documents prepared by the parties in which they embodied their respective intentions, rights and obligations. Where parties bind themselves by a lawful contract, a court must give effect to the contract as written and the terms of the contract, where clear and unambiguous, are conclusive. Goodman v. Newzona Investment Co., 101 Ariz. 470, 421 P.2d 318 (1966). Furthermore, the very existence of the contract itself, the meeting of the minds, the intention to assume an obligation, and the understanding are to be determined in case of doubt, not only from the words used, but also from the situation, acts, and conduct of the parties, and from the attendant circumstances. Malcoff v. Coyier, 14 Ariz.App. 524, 484 P.2d 1053 (1971); 17 Am.Jur.2d Contracts, § 1.

■ While it is well-settled that generally the interpretation of an agreement is a question of law for the court, C & T Land & Development Co. v. Bushnell, 106 Ariz. 21, 470 P.2d 102 (1970); Kintner v. Wolfe, 102 Ariz. 164, 426 P.2d 798 (1967), it is equally well established that an appellate court is not bound by the trial court's interpretation. T. D. Dennis Builder, Inc. v. Goff, 101 Ariz. 211, 418 P.2d 367 (1966); LeBaron v. Crismon, 100 Ariz. 206, 412 P.2d 705 (1966).

Reversed and remanded for further proceedings not inconsistent herewith.

KRUCKER, C. J., and HATHAWAY, J., concur.