763 P.2d 1387

**Luis Oscar SOSA and Herlinda J. Sosa, husband and wife, Plaintiffs/Appellants,**

v.

**MARINE MIDLAND AUTOMOTIVE FINANCIAL CORPORATION, a California corporation, Defendant/Appellee.**

**No. 2 CA–CV 88–0166.**

Court of Appeals of Arizona,
Division 2, Department A.

Oct. 31, 1988.

Law Office of Michael O. Zavala by Michael O. Zavala, Tucson, for plaintiffs/appellants.

Whitehill, West, Christoffel & Zickerman, P.C. by Alex G. Duncan, Tucson, for defendant/appellee.

## OPINION

HOWARD, Judge.

This is an appeal from the granting of a summary judgment. The facts, considered in the light most favorable to appellants, see *Savoca Masonry Co., Inc. v. Homes & Sons Construction Co., Inc.*, 112 Ariz. 392, 542 P.2d 817 (1975), show that there is no genuine dispute as to the material facts and that appellee was entitled to judgment as a matter of law. *Dutch Inns of America, Inc. v. Horizon Corporation*, 18 Ariz. App. 116, 500 P.2d 901 (1972).

Appellants leased an automobile from appellee. The written lease was for five years and contained an option to purchase at the end of the lease term which could be exercised by the payment of $150 plus the estimated wholesale value of $6,195. The agreed value of the automobile was $17,-268. The lease required appellants to maintain certain insurance coverage and provided that if this insurance was not maintained the appellee could treat the lease as being in default and could, without notice, terminate appellants' lease, right to possession and use of the automobile and repossess it.

Several months following the execution of the lease, the Lease Tracking Unit of Progressive Insurance Company in Richmond, California, discovered that the Sosas' insurance on the vehicle had been cancelled by the J.C. Penney Casualty Insurance Company effective July 8, 1986, and that no other insurance had been obtained since that time. An employee of Progressive Insurance Company, Gloria M. Ridge, contacted the Sosas' residence by telephone on September 30, 1986, in order to check on the status of the insurance after the Sosas had failed to respond to numerous letters. Luis Oscar Sosa returned Ridge's telephone call on October 1, 1986, and told her that they had no intention of obtaining insurance on a leased vehicle. After being advised that the vehicle could be repossessed if proper insurance were not obtained, Sosa stated that they could come and pick up the car.

Immediately thereafter, Ridge contacted Art Cota, an accounting executive with Marine Midland Insurance, and advised him of the conversation with Sosa. On that same day, October 1, 1986, Cota contacted Sosa by telephone to discuss the situation. Sosa reiterated to Cota that he had no intention of obtaining insurance on the leased vehicle and advised Cota that he wished the vehicle to be picked up. Cota immediately contacted the company known as the Tucson Re-

covery Bureau located in Tucson and authorized them to recover the vehicle in question from the Sosas. The vehicle was eventually repossessed from the Sosas on October 13, 1986. It was stored with and remained in the possession of Tucson Recovery Bureau until about December 11, 1986.

Beginning October 14, 1986, Gregory Payton, a collection supervisor with Marine Midland, placed numerous telephone calls to both the Sosa residence and their attorney Carl Macpherson, in an attempt to arrange some solution so the Sosas could regain the use of the vehicle. Payton eventually spoke with Macpherson on October 20, 1986, and advised him that if the Sosas were able to provide verification of the required insurance coverage and were willing to pay the repossession fees and costs which had been incurred, the vehicle could be returned to them. Macpherson indicated that he would contact the Sosas and would then advise Payton of their desire.

When no response was received from Macpherson, Payton sent a mailgram and a letter by regular first class mail to Macpherson on October 29, 1986, indicating that it was imperative that he contact Payton regarding the Sosas' intentions. No response was ever received from Macpherson. Additionally, Payton sent a mailgram to the Sosas' residence on November 25, 1986, asking that they immediately contact him regarding their intention to redeem the leased vehicle. No response was ever received from the Sosas.

A Notice of Lessor's Intent to Sell Vehicle dated November 5, 1986, was sent to the Sosas at their residence by Marine Midland. Due to the Sosas' failure to respond to any of those notices which were sent by Marine Midland or otherwise make an attempt to redeem the leased vehicle, the vehicle was sold at public auction for $12,439.

By letter dated February 20, 1987, Marine Midland advised the Sosas that a net deficiency balance of $4,635.46 was due and requested that the Sosas contact its office to make arrangements for payment of that sum. When no response was received, Ma-

rine Midland sent a letter to the Sosas dated March 2, 1987, again requesting that they contact its offices to make arrangements for payment of the outstanding deficiency balance.

Sosas' response was to file this lawsuit against Beaudry Motor Company, Inc. and Marine Midland Automotive Financial Corporation on April 13, 1987, alleging breach of contract, conversion, credit disparagement and outrage. They requested indemnification from the deficiency judgment in the amount of $4,634.46, and unspecified compensatory damages for, among other things, anxiety, humiliation and disparagement of their credit. They also sought unspecified punitive damages, their costs and attorney's fees. Marine Midland filed its answer and a counterclaim alleging breach of contract and requesting a deficiency judgment against the Sosas in the sum of $4,635.46. Marine Midland subsequently filed a motion for summary judgment on the complaint and counterclaim. The summary judgment was granted in Marine Midland's favor, the trial court finding no just reason to delay the entry of final judgment in favor of Marine Midland, this appeal followed.

■ The Sosas do not dispute any of the facts which we have set forth. Their opposition to the motion for summary judgment consisted of an affidavit by Mr. Sosa saying that on October 2, 1986, he spoke to an unknown representative of Marine Midland and informed him that he had papers verifying insurance coverage on the automobile and that he was told by said representative that they would send someone to pick up the binder coverage. The Sosas contend that this conversation created an issue of fact as to whether Marine Midland waived its right to repossess the vehicle. We do not agree. Waiver is an intentional relinquishment of a known right. *Northern Arizona Gas Service v. Petrolane Transport, Inc.*, 145 Ariz. 467, 702 P.2d 696 (1984). The Sosas presented no evidence by affidavit or otherwise that the person to whom Mr. Sosa spoke over the telephone had any knowledge of the circumstances surrounding the lease such that his state-

ment that they would pick up the binder constituted a waiver on the previous forfeiture of Marine Midland's right to repossess.

Although not raised by either party, we have considered whether the lease was in truth a secured transaction and thus subject to the Uniform Commercial Code. A.R.S. § 44–2201, et seq. Under the U.C.C., the securing of an insurance binder after default but prior to repossession may have prevented such repossession. See A.R.S. § 47–9506 and *Scottsdale Discount Corp. v. Dodson,* 4 Ariz.App. 22, 417 P.2d 535 (1966). Lease agreements with an option to purchase at the end of the lease have been held to be secured transactions subject to the U.C.C. *Stillwell Welding Co. v. Colt Trucking,* 741 P.2d 598 (Wyo. 1987). And see J. White & R. Summers, The Uniform Commercial Code, (2d ed. 1980) at 880–883. Application of the "economic reality" test here reveals that the amounts which appellant must pay to exercise his option exceed 25% of the total list price. This indicates that the lessee was not really paying installments of the price but was paying true rent and that the lease was a true lease and not a secured agreement. White & Summers, supra, at 881; *In re Wheatlan Elec. Products Co.,* 237 F.Supp. 820 (W.D.Pa.1964). Thus, this lease is governed by its own terms and not the U.C.C.

Appellee has asked for attorney's fees which will be awarded upon its compliance with Rule 21(c), Rules of Civil Appellate Procedure, 17A A.R.S.

AFFIRMED.

LIVERMORE, P.J., and ROLL, J., concur.