## MOFFAT TUNNEL LEAGUE ET AL. *v.* UNITED STATES ET AL.

No. 499.   Argued February 15, 1933.—Decided April 10, 1933

*Mr. Albert L. Vogl,* with whom *Mr. Carle Whitehead* was on the brief, for appellants.

*Mr. Nelson Thomas,* with whom *Solicitor General Thacher* and *Messrs. Daniel W. Knowlton* and *Elmer B. Collins* were on the brief, for the United States et al., appellees.

*Mr. Henry McAllister,* with whom *Messrs. Elmer L. Brock* and *Erskine R. Myer* were on the brief, for Denver & Rio Grande Western R. Co. et al., appellees.

Mr. Justice Butler delivered the opinion of the Court.

Appellants brought this suit against the United States, the Interstate Commerce Commission and the Denver and Rio Grande Western Railroad Company to set aside an order of the Commission, made pursuant to 49 U.S.C., § 5 (2),[1] authorizing that company by stock purchase to acquire control of the Denver and Salt Lake Railway Company—called the Moffat Road. The latter, the Moffat Tunnel Improvement District, and the State of Colorado, by its Public Utilities Commission, intervened as parties defendant. The grounds of suit alleged in the complaint are that the order is not supported by evidence and that, because the examiner excluded what plaintiffs assert to be material evidence concerning the effect of such acquisition upon the public interest, the Commission failed to hold a hearing as required by the Act. They have now abandoned the first of these contentions. Copies of the report, 170 I.C.C. 4, and the supplemental report and order, 175 I.C.C. 542, together with a narrative

---

[1] " Whenever the Commission is of opinion after hearing, upon application of any carrier or carriers engaged in the transportation of passengers or property subject to this Act, that the acquisition, to the extent indicated by the Commission, by one of such carriers of the control of any other such carrier or carriers either under a lease or by the purchase of stock or in any other manner not involving the consolidation of such carriers into a single system for ownership and operation, will be in the public interest, the Commission shall have authority by order to approve and authorize such acquisition, under such rules and regulations and for such consideration and on such terms and conditions as shall be found by the Commission to be just and reasonable in the premises."

Added by § 407 of the Transportation Act of February 28, 1920, 41 Stat. 480. 49 U.S.C., § 5 (2).

of evidence before the Commission were attached to the complaint.

All the defendants prayed that the suit be dismissed. In substance they maintained that neither plaintiff is a legal entity or has capacity to maintain this suit on its own behalf or as representative of others, and that neither was a party in interest before the Commission or has any pecuniary, property or legal right or interest injuriously affected or threatened by the order.

Plaintiffs applied to the court, consisting of three judges, for a temporary injunction. The motions to dismiss were submitted at the same time. The court held that plaintiffs failed to show that they had a right to maintain the suit. But, conceiving that on review dismissal on that ground might be deemed not sufficient finally to dispose of the litigation, it also passed upon the merits. Decree was entered accordingly. 59 F. (2d) 760.

The Rio Grande was built between 1871 and 1890. Its main line between Denver and Ogden, 782 miles, follows a circuitous and difficult route through mountainous country. It extends from Denver, a mile above sea level, southerly 120 miles to Pueblo, where the elevation is 4,668 feet, thence westerly, northerly, southwesterly and northwesterly to Ogden. It rises to 10,240 feet over the Continental Divide at Tennessee Pass east of Dotsero and descends to a level of 4,583 at Grand Junction and 4,293 at Ogden. This line constitutes an important stretch for through transportation, via St. Louis and Chicago, between Pacific Coast points and the East. But as to traffic to or from the west originating at, destined to or passing through Denver, the Rio Grande is at a great disadvantage because of its circuitous route between Pueblo and Dotsero.

The Moffat Road was constructed between 1903 and 1913 and extends westerly from Denver 232 miles through

Grand and Routt counties to Craig in Moffat county, Colorado. Its promoters at first intended to construct the line more than 250 miles farther into and through Duchesne and Uintah counties, Utah, to reach Provo, Salt Lake or Ogden. But that became impossible, and it appears from the evidence that the company now has no such plans. Originally the line crossed the Continental Divide, rising from an elevation of 5,170 feet at Denver to 11,660 at Corona, and descending to 6,700 at Orestod, which is 41 miles northeasterly of Dotsero on the Rio Grande. The use of the line over the divide was so expensive and difficult that its abandonment was contemplated. Its continued operation was deemed of great importance to Denver and the northwestern part of Colorado. Accordingly the General Assembly of 1922 created the Moffat Tunnel Improvement District, including all of Denver and parts or all of the counties traversed by the road, and provided for the construction of a tunnel to be used as a transportation facility for railroads, power, water, telephone and telegraph. The cost was to be covered by an issue of bonds and, if necessary, by special assessments on real estate in the District, according to benefits determined by the Moffat Tunnel Commission, which was also created by the Act. The tunnel was constructed at a cost of $15,470,000. In January, 1926, the District made a lease to the Moffat covering all railroad uses, and the tunnel has since been used as a part of its line. The commission assessed the benefits against all real estate in the district at $45,000,000, of which 89% is upon property in Denver. The other parts of the District are mountainous and sparsely settled.

Construction of about 41 miles of line between Orestod on the Moffat and Dotsero on the Rio Grande, and use by the latter of the Moffat road through the tunnel, would reduce the distance between Denver and points on the Rio Grande west of Dotsero by 173 miles and avoid the heavy

grades over the divide. The Interstate Commerce Commission's order declaring that public convenience and necessity require the cut-off, and its order authorizing the Rio Grande to secure stock control of the Moffat, open the way for this development.[2]

' The complaint alleges that the Moffat Tunnel League is an unincorporated voluntary association organized for the purpose of assisting in the development of commercial interests and adequate transportation facilities in Grand, Routt and Moffat counties. The evidence shows that it consists of nine unnamed persons who were selected, three by each of the county boards of commissioners, from persons designated by commercial and other clubs, none of which is identified. The complaint alleges that the Uintah Basin Railroad League is an unincorporated voluntary association organized to promote the interests of Uintah and Duchesne counties. The evidence tends to show that it was created shortly before the hearing to secure railroad facilities for these counties, and that it is made up of clubs, towns and irrigation companies. But none of these is named or in any manner identified. It is said that the League also includes the boards of these two counties. But no authorization by local law or official action on the part of either is disclosed.

These leagues are not corporations, quasi-corporations, or organized pursuant to or recognized by any law. Neither is a person in law and, unless authorized by statute, they have no capacity to sue. *Brown* v. *United States*, 276 U.S. 134, 141. *United Mine Workers* v. *Coronado Coal Co.*, 259 U.S. 344, 385. *St. Paul Typothetae* v. *Bookbinders' Union*, 94 Minn. 351, 357; 102 N.W. 725. *Pickett* v. *Walsh*, 192 Mass. 572, 589; 78 N.E. 753. *Kar-*

---

. [2] See Colorado Sess. Laws, Ex. Sess., 1922, c. 2, p. 88. *Milheim* v. *Moffat Tunnel Dist.*, 72 Colo. 268; 211 Pac. 649; 262 U.S. 710. *Moffat Tunnel Imp. Dist.* v. *Denver & S. L. Ry. Co.*, 45 F. (2d) 715; certiorari denied, 283 U.S. 837.

*ges. Furniture Co.* v. *Amalgamated Woodworkers Union,* 165 Ind. 421, 423; 75 N.E. 877. *Anti-Vice Committee* v. *Simon,* 151 La. 494; 91 So. 851. There is no federal stat-ute that purports to give any unincorporated voluntary association standing to bring suit to set aside an order of the Commission. Every such suit must be brought against the United States. Urgent Deficiencies Act, 38 Stat. 219. 28 U.S.C., §§ 41 (28), 46, 48. And, save as authorized by the Congress, it may not be sued. The Act does not specify the classes of persons, natural or artificial, who may sue, or what shall constitute a cause of action for the setting aside of an order. But it does require that the petition shall set forth " the facts constituting petitioner's cause of action,"[2] and by other provisions shows that for failure so to do the suit shall be dismissed. *Id.,* § 45. Consequently the complaint must show that plaintiff has, or represents others having, a legal right or interest that will be injuriously affected by the order. *Edward Hines Trustees* v. *United States,* 263 U.S. 143, 148. *Sprunt & Son* v. *United States,* 281 U.S. 249, 254. *Pittsburgh & W. Va. Ry.* v. *United States,* 281 U.S. 479, 486. Plaintiffs have failed to show that they are so qualified. Their interest is not a legal one. It is no more than a sentiment, such as may be entertained by members of the public in the territory west of Craig, that the improvement of transportation facilities authorized by the Commission will lessen the possibility of construction by a rival of the Rio Grande of an extension of the Moffat to Utah common points. Cf. *Interstate Commerce Commission* v. *Oregon-Washington Co.,* 288 U.S. 14.

Plaintiffs contend that they are empowered to sue by the first proviso of § 45a.[3] And they seek support from

[3] " The Attorney General shall have charge and control of the interests of the Government in the cases specified in section 44 of this title and in the cases and proceedings under sections 20, 43 and 49 of Title 49, . . . : *Provided,* That the Interstate Commerce

the second proviso of that section. But these clauses do not purport to authorize those within their terms to bring suit. The first provides that a party, in interest to proceedings before the Commission in which an order is made may appear and be heard in a suit involving the " validity of such order . . . and the interest of such party." The second declares that " communities " and others there mentioned, who are interested in the "controversy or question " in any suit brought by anyone under specified sections, may intervene at any time after institution of the suit. The right so to appear and be heard or so to intervene in a suit brought by another is to be distinguished from an authorization to bring suit. The case is utterly unlike *Chicago Junction Case*, 264 U.S. 258, 267; *Western Pacific Cal. R. Co.* v. *Southern Pacific Co.*, 284

---

Commission and any party or parties in interest to the proceedings before the commission, in which an order or requirement is made, may appear as parties thereto of their own motion and as of right, and be represented by their counsel, in any suit wherein is involved the validity of such order or requirement or any part thereof, and the interest of such party . . . : *Provided further,* That communities, associations, corporations, firms, and individuals who are interested in the controversy or question before the Interstate Commerce Commission, or in any suit which may be brought by anyone under the provisions of the aforesaid sections relating to action of the Interstate Commerce Commission, may intervene in said suit or proceedings at any time after the institution thereof; and the Attorney General shall not dispose of or discontinue said suit or proceeding over the objection of such party or intervenor aforesaid, but said intervenor or intervenors may prosecute, defend, or continue said suit or proceeding unaffected by the action or nonaction of the Attorney General therein.

"Complainants before the Interstate Commerce Commission interested in a case shall have the right to appear and be made parties to the case and be represented before the courts by counsel, under such regulations as are now permitted in similar circumstances under the rules and practice of equity courts of the United States." §§ 212, 213, Judicial Code. 28 U.S.C., § 45 (a).

U.S. 47, and *Claiborne-Annapolis Ferry* v. *United States,* 285 U.S. 382. In each of these a carrier brought suit to set aside an order of the Commission. No question of its capacity to sue was involved. The order assailed directly affected its transportation business.

Here plaintiffs have neither capacity to sue nor legal interest or right affected by the order. *Affirmed.*