**PREMIER PEAT MOSS CORPORATION et al., Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

United States District Court
S. D. New York.

Nov. 8, 1956.

Mitchell Salem Fisher, New York City, for plaintiffs.

Victor R. Hansen, Asst. Atty. Gen., James E. Kilday and James H. Durkin, Attys., Dept. of Justice, Washington, D. C., Paul W. Williams, U. S. Atty., New York City, Robert W. Ginnane, Gen. Counsel, and Leo H. Pou, Associate Gen. Counsel, Interstate Commerce Commission, Washington, D. C., for defendants.

Bernard Sobol, New York City, Robert S. Trigg, Carl Helmetag, Jr., Philadelphia, Pa., for intervenor railroads.

Before SWAN, Circuit Judge, and WALSH and CASHIN, District Judges.

SWAN, Circuit Judge.

This action is the sequel to proceedings before the Interstate Commerce Commission initiated in 1953 by applications of motor carriers, pursuant to 49 U.S.C.A. § 309, for permits to transport as contract carriers peat moss, ground or not ground, from New York and New Jersey piers in New York Harbor to points in New York, New Jersey and Connecticut within 150 miles of New York City. The applicants moved for dismissal of their own applications on the ground that peat moss is an agricultural commodity

and therefore the transportation of it by contract carriers in interstate commerce is exempted from the permit requirements of § 309 by § 303(b) (6); [1] they sought permits only in the event of rejection of this contention. The motion was supported by the Secretary of Agriculture, who filed a brief without formally intervening, and by intervening producers and shippers of peat moss, including plaintiffs in the present action. Several Railroads intervened and opposed the motion. The Examiner who heard the case took evidence as to the nature of peat moss, its use, the manner of harvesting it, and the need of shippers for motor carrier transportation. His report recommended that the Commission should find that peat moss is an agricultural commodity and should dismiss the applications for lack of jurisdiction. Division 1 of the Commission accepted the Examiner's findings of fact but ruled that peat moss is not an agricultural commodity within the statutory exemption, and that the applicants were entitled to permits as motor contract carriers. Marino Trucking Co., Inc., Extension—Peat, 66 M.C.C. 105. Petitions for reconsideration were denied by the Commission on April 10, 1956, and the present suit was filed on June 1st praying that the orders of the Commission be set aside in so far as they conclude that peat moss is not an "agricultural" commodity within the meaning of the statute.

There is no dispute between the parties as to the facts. The merits of the controversy are whether the Commission was correct in ruling that peat moss is not an "agricultural" commodity within 49 U.S.C.A. § 303(b) (6). But before reaching the merits it is necessary to consider the contention of the defendants and the intervening Railroads that the plaintiffs have no standing to maintain the present suit.

██ To attack an order of the Commission a plaintiff must show that he has "a legal right or interest that will be injuriously affected by the order." [2] The defendants, whose argument the Railroads also adopt, contend that the orders here involved do not affect any right of the plaintiffs because they do not require the plaintiffs to do or to refrain from doing anything; that all the plaintiffs allege by way of injury is that they will have to pay more for transportation of peat moss by regulated motor carriers than they did before the Commission ruled that peat moss was not an agricultural commodity, which is merely saying that the orders will have an adverse effect on the plaintiffs' economic position; and that this is not enough to give plaintiffs standing to attack the orders, since "They are entitled as shippers only to reasonable service at reasonable rates and without unjust discrimination." [3] We accept the legal propositions enunciated by the cited authorities, but they do not dispose of the case at bar. Here the question determinative of the shippers' standing to maintain the suit is whether or not the Commission has jurisdiction over motor carriers of peat moss. If it does, such carriers are required to establish and observe reasonable minimum rates and charges for the services rendered, and are prohibited from collecting less than the established minimum rates.[4] Hence the right of shippers to contract for transportation of peat moss is restricted to those motor carriers to whom permits are or may be issued, and the minimum rates payable are fixed by their filed schedules of rates. On the other hand, if the Commission does not have jurisdiction, the plaintiffs are free

---

1. 49 U.S.C.A. § 303(b) declares: "Nothing in this chapter * * * shall be construed to include * * * (6) motor vehicles used in carrying property consisting of ordinary livestock, fish (including shell fish), or agricultural (including horticultural) commodities (not including manufactured products thereof) * * *."

2. Moffat Tunnel League v. United States, 289 U.S. 113, 119, 53 S.Ct. 543, 545, 77 L.Ed. 1069.

3. Sprunt & Son v. United States, 281 U.S. 249, 255, 50 S.Ct. 315, 318, 74 L.Ed. 832.

4. 49 U.S.C.A. § 318(a).

to get the best bargain they can from a motor carrier. For simplicity of discussion assume that the Commission should make a perfectly arbitrary ruling that tomatoes are not an "agricultural" commodity. Such a plainly erroneous determination would deprive a tomato farmer of the benefits Congress intended to confer by § 303(b) (6), namely, those flowing from freedom to use unregulated motor carriers.[5] It would thus deprive him of a statutory right and would restrict his common-law right to contract for transportation on any terms acceptable to the carriers. The plaintiffs have similar rights which the orders injuriously affect, if the Commission erred in excluding peat moss from the "agricultural" exemption. This is plainly stated in Frozen Food Express v. United States, 351 U.S. 40, 76 S.Ct. 569. There the plaintiff was a motor carrier transporting numerous commodities which the Commission ruled were non-exempt but which the carrier claimed were agricultural commodities. In holding that the complaint presented justiciable issues, the opinion states, 351 U.S. at pages 43–44, 76 S.Ct. at page 571:

> "The determination by the Commission that a commodity is not an exempt agricultural product has an immediate and practical impact on carriers who are transporting the commodities, and on shippers as well. * * * Carriers and shippers alike are told that they are or are not free to bargain for rates, that they must or must not pay the filed charges. The 'order' of the Commission is in substance a 'declaratory' one, see 60 Stat. 240, 5 U.S.C. § 1004(d), 5 U.S.C.A. § 1004(d), which touches vital interests of carriers and shippers alike and sets the standard for shaping the manner in which an impor-

tant segment of the trucking business will be done."

In Consolidated Truck Service, Inc. v. United States, D.C.N.J., 144 F.Supp. 814, 815, Judge Biggs' opinion contains a dictum with respect to the rights of shippers, as follows: "If Consolidated does transport them [shelled nuts] it and its shippers will incur the penalties prescribed by the statute, the Commission having prohibited the transportation." [6] This is a further indication of the substantial interest which shippers have in the situation. In our opinion the plaintiffs have standing to maintain the suit.

■ On the merits we think the Commission was wrong. Whether the statutory exemption should be construed to cover a product of nature having such physical characteristics as peat moss is a question on which the Commission's determination, although entitled to deference, does not conclude the courts.[7]

The Commission made the following findings:

> "Peat moss is composed of plants which were recently growing, or which grew many years ago, such as sphagnum moss, reeds, ferns, certain types of trees, other plants, or, in some cases, a mixture of these materials. This vegetation after being grown on the land, has ceased to live, and has undergone partial decomposition. Deposits are accumulated under water or in places waterlogged most of the time. Organic matter decomposes very slowly under water. * * * Therefore, at a bog there will be found living matter growing on top; immediately below, matter that was alive a short time ago; and at successively lower depths, matter which has been dead for longer and longer periods. If trees have formed

5. See East Texas Motor Freight Lines v. Frozen Food Express, 351 U.S. 49, 51, 76 S.Ct. 574, 576: "The exemption of motor vehicles carrying 'agricultural (including horticultural) commodities (not including manufactured products thereof)' was designed to preserve for

the farmers the advantage of low-cost motor transportation."

6. See 49 U.S.C.A. § 322(c).

7. See East Texas Lines v. Frozen Food Express, 351 U.S. 49, 54, 76 S.Ct. 574.

a large portion of the deposit it is known as woody peat, while if the deposit is comprised chiefly of sphagnum moss the result is a very fine sphagnum-type peat moss. The latter type is usually selected for the commercial trade, and is the type here under consideration. * * *

"In harvesting peat moss, a usual preliminary step consists in draining at least the part of the bog selected for immediate use. Spade-like implements are used for cutting and moving peat moss in blocks. The blocks, often about 8 x 16 inches' surface measurement and cut at a depth of about 8 inches, are sometimes placed in ricks, or stacks, to drain and to dry. A more rapid method of drying involves stacking the blocks on wooden frames. When handled in this way the blocks may be air dried in 2 or 3 weeks, while a whole season is often required for drying peat moss in ricks. After drying, the blocks are taken to a storage house, usually a shed-like structure, where they are shredded, baled, and made ready for shipment. The shredding devices are usually modifications of grain-threshing equipment. * * * "

The reasons advanced by the Commission for rejecting the Examiner's recommendation that peat moss be held to be an agricultural commodity are stated in a single paragraph of its opinion.[8] They are three: (1) that in an earlier decision the Commission had set forth a definition of "agricultural commodities" which Congress may be considered to have otherwise approved by implication when it adopted the 1952 amendment to include "(horticultural)"; [9] (2) that peat moss is not within the earlier definition since it is not produced on a farm by tillage

and cultivation of the soil; and (3) that it is not a crop which once having commenced growth in the earth, air or water, can be harvested within any period capable of reasonable forecast by living man.

None of these reasons do we find persuasive. The earlier decision made no mention of peat moss. Nor did its definition of agricultural commodities purport to be all inclusive. It merely lists commodities which it "embraces"; hence there is no implication that all not listed were excluded from the definition. Consequently the suggestion that Congress may be considered to have approved the definition can carry no implication that Congress approved a holding that peat moss was a non-exempt commodity. Moreover, the rationale is contra to East Texas Lines v. Frozen Food Express, 351 U.S. 49, 76 S.Ct. 574, where a commodity which had been denominated as non-agricultural in the "Determination" case because it was a manufactured product, was held by the Supreme Court to be within the exemption.

The argument that peat moss is not within the definition because it is not produced by cultivation of the soil is likewise unpersuasive. In the earlier decision the Commission itself recognized as within the exemption numerous commodities which are not the result of tillage and cultivation; for example, forest products, wild berries, marsh hay, prairie grass, and Spanish moss.

The third reason advanced, namely, that peat moss is not a crop which can be harvested within any period of reasonable forecast is insufficient to distinguish it from other wild products which are admittedly "agricultural"; for example, long-lived, slow-growing trees. Furthermore, there is testimony in the record that under certain conditions peat moss

8. 66 M.C.C. 105, 109.

9. In the earlier decision, Determination of Agricultural Commodities, 52 M.C.C. 511, 519, the Commission concluded that the term agricultural commodities as used in the section "embraces 'all products raised or produced on farms by tillage and cultivation of the soil (such as vegetables, fruits and nuts); forest products; live poultry and bees; and commodities produced by ordinary livestock, live poultry, and bees (such as milk, wool, eggs, and honey).'"

may be ready to harvest within fifteen or twenty years. It is harvested in the summer season, dried in the sun and then processed by cutting and baling. Neither the report of the Commission nor the report of the Examiner contains any finding as to the extent to which peat moss comes from farms. But the record shows it is dug both on land of farmers within the United States and on land of commercial peat moss companies. In some instances, farmers dig it themselves and bring loads of it to a peat moss company plant; in other instances, they may sell it in the ground and it is harvested by personnel of the company. If the essential nature of a commodity is "agricultural", it is irrelevant that at times it is harvested by commercial interests rather than the farmer himself, or that, as in the case at bar, the commodity is imported.

Indubitably peat moss is of vegetable origin. It is "produced by nature from what was once vegetation, and chemically it is substantially the same as the vegetation from whence it is derived. In fact, its chief characteristic results from the fact that nature itself has arrested any substantial change which without the protection of water would otherwise have taken place. Its principal uses, too, are either agricultural or horticultural." [10]

The defendants urge that peat moss is unlike any commodity produced on a farm and is more in the nature of coal. But in the case of coal, although in origin derived from vegetation, the processes of nature have converted it into a mineral. Not so in the case of peat moss. There the processes of decay have not progressed far enough to cause any substantial change in its original chemical content.

All of the witnesses with expert qualifications, several of whom had also had farm experience, testified that peat moss is commonly regarded as an agricultural commodity. Under the circumstances

above recited and in the absence of any evidence in the record which suggests that peat moss may properly be classified in some non-agricultural category, we can see no rational basis for disregarding the uniformity of expert opinion. We think the Commission exceeded the limits placed upon its statutory powers in excluding the interstate transportation of peat moss from the exemption provided by § 303(b) (6).[11] Accordingly, the orders under review must be set aside and an injunction against their enforcement will be granted.

If findings of fact and conclusions of law, supplementing those contained herein, are desired, the parties may submit proposals therefor within 15 days.

---

10. Quoted from the Examiner's report.

11. See East Texas Lines' v. Frozen Food Express, 351 U.S. 49, 54, 76 S.Ct. 574.