584 P.2d 564

**ASSOCIATED STUDENTS OF the UNI-VERSITY OF ARIZONA, for the benefit of its members, and John Kromko, Appellants and Cross-Appellees,**

v.

**ARIZONA BOARD OF REGENTS, Appellee and Cross-Appellant.**

**No. 2 CA–CIV 2384.**

Court of Appeals of Arizona,
Division 2.

Feb. 7, 1978.

Rehearing Denied March 31, 1978.

Review Denied Sept. 14, 1978.

Risner, Raven & Keller by William J. Risner, Tucson, for appellants and cross-appellees.

Bruce E. Babbitt, Atty. Gen., by David W. Ronald, Asst. Atty. Gen., Phoenix, for appellee and cross-appellant.

## OPINION

HATHAWAY, Judge.

This appeal is from a judgment denying Associated Students of the University of Arizona (hereinafter referred to as ASUA) any money on its complaint and granting to the Arizona Board of Regents the right to maintain and exercise supervision over all funds produced through the operation of the bookstores at the University of Arizona. ASUA, as an unincorporated association for the benefit of its members, and John Kromko, then the Chairman of the ASUA Appropriations Board, brought suit against the Board of Regents, an independent body corporate which has jurisdiction and control over the University of Arizona, after a request to the University Business Office that it disburse to ASUA $10,000 in bookstore profits from 1970–71 was refused. ASUA consists of all students who are registered at the University of Arizona. The Appropriations Board, which regulates ASUA's finances and appropriates its funds, intended to deposit this money in an account not under the control of the University administration.

In its complaint, ASUA, alleging ownership of the bookstore and its profits by virtue of an "Agreement for Sale of Cooperative Bookstore to the Associated Students" entered into between it and the Board of Regents in 1937, sought the $10,000 it had previously been refused. The agreement provided that management and operation of the bookstore and its inventory were transferred to ASUA for approximately $21,500 to be paid in specified yearly installments. It was signed for the Board of Regents by its President and Secretary and for ASUA by its Graduate Manager, whose duties were to furnish continuity to ASUA and to supervise and manage its business affairs. At this time, the Board of Control (now the Appropriations Board) consisted of the Graduate Manager, a faculty member, an alumnus, the director of athletics and three students.

The Board of Regents, in its answer to the complaint, alleged that ASUA lacked standing or capacity to sue or enter into a contract. On cross-appeal, it challenges the trial court's finding that ASUA has standing and can sue and its judgment declaring the 1937 agreement between ASUA and the Board of Regents to be valid.

We first address the issue raised by the Board of Regents as to ASUA's capacity to sue and agree that it lacked capacity under Rule 17(a), Arizona Rules of Civil Procedure, 16 A.R.S., to bring this suit.

█ It was a maxim of the common law that an unincorporated association could not be a party to litigation. "The well-established rule is that in the absence of an enabling or permissive statute or rule of practice, an unincorporated association, society, or club cannot sue or be sued in the organization's own name. The reason is that such an association . . . in the absence of statutes recognizing it, has no legal entity distinct from that of its members." 6 Am.Jur.2d, Associations and Clubs, § 51.

█ Thus, unless authorized by an Arizona statute, ASUA, as an unincorporated association, has no capacity to sue the Board of Regents. *Moffat Tunnel League et al. v. United States et al.*, 289 U.S. 113, 53 S.Ct. 543, 77 L.Ed. 1069 (1933). An express statutory provision, however, is not indispensable to an association's capacity to sue and be sued in the association's name. A suit may be maintained by virtue of necessary implication from statutory provisions which recognize an unincorporated association as a legal entity, but do not specifically authorize it to sue or be sued. *United Mine Workers of America et al. v. Coronado Coal Co. et al.*, 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975 (1922); *Jardine v. Superior Court In and For Los Angeles County et al.*, 213 Cal. 301, 2 P.2d 756 (1931).

█ ASUA argues that its capacity to sue in its common name arises by necessary implication from the Arizona Constitution

art. 14, § 1, Arizona statutes, A.R.S. §§ 44–2208(28) and 1–215(24), and Rules 4(d)(6), and 17(a), Arizona Rules of Civil Procedure, 16 A.R.S. We cannot agree with this interpretation of Arizona law. Simply because an association is included as a person under A.R.S. § 1–215(24), for example, does not establish it as a legal entity capable of suing or being sued in its own right. See *Dolph v. Cortez*, 8 Ariz.App. 429, 446 P.2d 939 (1968).

The common law, except as modified by statute or unsuited to our local system or condition, is still in force in Arizona. *McClure v. Johnson*, 50 Ariz. 76, 69 P.2d 573 (1937); A.R.S. § 1–201. "Where a statute revises the common law and is clearly designed as a substitute therefor, the common law is repealed. However, statutes are not deemed to repeal the common law by implication unless the legislative intent to do so is clearly manifested." *Tucson Gas & Electric Company v. Schantz*, 5 Ariz.App. 511 at 515, 428 P.2d 686 at 690 (1967).

If the State of Arizona wishes to grant unincorporated associations legal status, it may do so by the appropriate legislation. However, until the legislative intent to do so is clearly manifested, the privilege must be denied. ASUA was therefore not a proper plaintiff in this action, and since Kromko's rights can be no greater than the group he represents, he also lacked capacity to maintain this suit.

ASUA urges that principles of equity and fairness dictate that the Board of Regents should not now be permitted to raise the defense that ASUA has no legal status to sue or contract. One who deals with an association as a legal entity capable of transacting business and who thus receives money or value from that association, is estopped from denying the legality of its existence or right to contract. *State Farm Mut. Automobile Ins. Co. v. Mackechnie*, 114 F.2d 728 (8th Cir. 1940).

Assuming arguendo that the Board of Regents did deal with ASUA as a legal entity, it is not now estopped from denying ASUA's capacity to sue. The Board of Regents is a state agency. *City of Tempe v. Arizona Board of Regents*, 11 Ariz.App. 24, 461 P.2d 503 (1969). In Arizona, as a general rule, estoppel *in pais* will not operate against the state or its agencies. *O'Connor v. Industrial Commission*, 19 Ariz.App. 43, 504 P.2d 966 (1972); *Maricopa County v. Cities & Towns of Avondale et al., Wickenburg*, 12 Ariz.App. 109, 467 P.2d 949 (1970).

If the issue of ASUA's capacity to sue were resolved in its favor, however, it would still not prevail on appeal. The trial court was confronted with conflicting interpretations of the various provisions of the 1937 agreement. Relevant provisions are:

"That whereas the Associated Students of the University of Arizona desire to operate the Cooperative Bookstore under their own management, the Board of Regents of the University of Arizona agree to transfer over to the Associated Students of the University the management and operation of the Cooperative Bookstore, together with the merchandise, caps and gowns, and furniture and fixtures under the following conditions:

\*      \*      \*      \*      \*      \*

The Board of Regents of the University agree to furnish space on the University campus for the Cooperative bookstore without charge.

\*      \*      \*      \*      \*      \*

It is further agreed that all collections, disbursements, and accounts will be kept by the Business Office of the University. The Board of Regents reserves the right to supervise, approve, or disapprove any policies in connection with the operation of the Cooperative Bookstore."

At the time the agreement was executed the bookstore had not been making any profit. ASUA argues that the contract itself as well as the circumstances unambiguously constitute an unlimited sale of property. In support of its position it points to the title, "Agreement for Sale of Cooperative Bookstore to the Associated Students" and to the recital of purpose which states that "the management and operation" of

the bookstore is to be transferred. It characterizes the agreement by which the bookstore accounts are housed by the University Business Office as custodial and interprets the reservation clause as merely empowering the Board of Regents to intervene in bookstore policy if it endangers the health, safety and well-being of the University at large. By this agreement, ASUA contends, it could only have intended to purchase the profits of its business, and the trial court's determination that the Board of Regents could exercise supervision over these profits constitutes an unlawful deprivation of property without due process of law.

The Board of Regents argues that the agreement unambiguously establishes its intent to retain final authority over bookstore matters, including the disposition of bookstore revenue. It emphasizes the broad reservation clause by which it has the right to supervise "any policies in connection with the operation" of the bookstore and interprets the requirement that accounts be kept by the University Business Office as allowing the Comptroller-Treasurer to oversee the financial affairs of the bookstore.

Though believing the agreement's language to be unambiguous, the Board of Regents introduced evidence concerning the construction given to the contract by the parties since the time of its execution. In order to determine the intent of the parties, the court examined several volumes of documentary evidence in addition to hearing the testimony of witnesses.

The judgment of the trial court was that ". . . the Arizona Board of Regents of the University of Arizona, acting through its authorized personnel at the University of Arizona, have the right to maintain and exercise supervision over all funds produced through the operation of the bookstores at the University of Arizona *as practiced by the parties since 1937.*" (Emphasis ours) Thus it is apparent from this judgment that the court felt the terms of the agreement were ambiguous and that it considered the conduct of the parties since 1937. ASUA contends that the court erred in its interpretation of the contract.

■ The initial determination of whether an agreement is ambiguous, and thus subject to interpretation through the use of parol evidence, is a question of law to be determined by the court. *Slater v. Westland*, 27 Ariz.App. 227, 553 P.2d 1212 (1976). An appellate court is not bound by the trial court's conclusions of law. The interpretation of an instrument is a question of law to be determined by this court independently. *Polk v. Koerner*, 111 Ariz. 493, 533 P.2d 660 (1975); *Dutch Inns of America, Inc. v. Horizon Corporation*, 18 Ariz.App. 116, 500 P.2d 901 (1972).

■ The mere fact that parties to an instrument disagree as to its meaning does not establish its ambiguity. Language is ambiguous when it can reasonably be construed in more than one sense and such construction cannot be determined within the four corners of the instrument. *University Realty & Development Company v. Omid-Gaf, Inc.*, 19 Ariz.App. 488, 508 P.2d 747 (1973).

■ We find the agreement for sale to be ambiguous. The character of a contract must be determined by its provisions rather than its label. *Kintner v. Wolfe*, 102 Ariz. 164, 426 P.2d 798 (1967). This contract does not, considered as a whole, clearly and unambiguously set forth the rights of the parties. It is not so worded that it can be given a certain or definite legal meaning or interpretation. *Richards Development Company v. Sligh*, 89 Ariz. 100, 358 P.2d 329 (1961). By examining its provisions, we cannot ascertain whether a transfer of bookstore management and operation to ASUA also included an unrestricted transfer of the right to and control of bookstore profits.

■ Once a contract is determined to be ambiguous, extrinsic evidence may be resorted to for the purpose of ascertaining its real meaning. *Crone v. Amado*, 69 Ariz. 389, 214 P.2d 518 (1950). The court will adopt a construction given to a contract by the parties themselves unless such construction does violence to the express terms of

the writing, especially where such interpretation has extended over a long period of time. *Crone v. Amado*, supra; *Rio Grande Oil Company v. Upton Oil Company*, 33 Ariz. 474, 266 P. 3 (1928); *Pendleton v. Brown*, 25 Ariz. 604, 221 P. 213 (1923). The acts of parties under a contract, before disputes arise, are the best evidence of the meaning of doubtful contractual terms. *Brown et al. v. Cowden Livestock Co.*, 187 F.2d 1015 (9th Cir. 1951).

[redacted] A determination of the surrounding facts, consideration of which is necessary to resolve ambiguities, is for the trier of fact. Where evidence is conflicting, a reviewing court will not substitute its opinion for that of the trial court. Evidence will be viewed most favorably to the appellee and in support of the result of the trial court, and when there is any reasonable evidence to support it, the judgment will not be disturbed on appeal. *Holaway v. Realty Associates*, 90 Ariz. 289, 367 P.2d 643 (1961).

[redacted] We have reviewed the record and there was reasonable evidence to support the trial court's determination that over the years the Board of Regents had consistently maintained supervision and ultimate control over bookstore operations, including disbursal of profits. The 1937 agreement thus conveyed only a limited property right to ASUA. It provided a source of funds, but subject to the Board of Regents' control. We find no deprivation of property without due process of law.

Affirmed.

HOWARD, J., and J. RICHARD HANNAH, Superior Court Judge, concur.

NOTE: Chief Judge JAMES L. RICHMOND, having requested that he be relieved from consideration of this matter, Judge J. RICHARD HANNAH was called to sit in his stead and participate in the determination of this decision.